UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

JAY ORLANDO, individually and on behalf of          )
all others similarly situated,                      )
                                                    )
            Plaintiff,                              )
                                                    )
      v.                                            )      Case No. 2:13-CV-261 JD
                                                    )
CFS Bancorp, Inc., *et al.*,                        )
                                                    )
            Defendants.                             )

## OPINION AND ORDER

On July 30, 2013, plaintiff Jay Orlando filed a class action complaint against defendants

alleging violations of § 14(a) of the Securities Exchange Act of 1934 and the SEC's Rule 14a-9

against all defendants (count 1), violations of § 20(a) against the director defendants (count 2),

and breach of fiduciary duties against the director defendants (count 3) [DE 1].  All defendants

moved to dismiss the complaint [DE 8; DE 18].  Thereafter, plaintiff filed an amended class

action complaint on September 20, 2013, omitting the claim for breach of fiduciary duties [DE

22], and defendants again moved to dismiss [DE 27; DE 33].  In short, plaintiff, an owner of an

unknown number of shares of CFS Bancorp, Inc. common stock, is attempting to prevent the

merger of CFS and First Merchants Corporation until defendants CFS and its Directors, Gregory

W. Blaine, Gene Diamond, John W. Palmer, Robert R. Ross, Joyce M. Simon and Daryl D.

Pomranke, along with First Merchants, provide information needed to cure alleged material

omissions from the proxy statement.  The shareholder vote to approve the merger is scheduled to

take place on October 29, 2013.  Having denied plaintiff's request for expedited discovery [DE

43], the Court considers plaintiff's motion for preliminary injunction [DE 35], along with the

relevant filings [DE 36, 37, 47, 48, 49].  Jurisdiction is established under 28 U.S.C. § 1331.

## I.  FACTUAL BACKGROUND

CFS is a publicly traded savings and loan holding company incorporated in Indiana and headquartered in Munster, Indiana [DE 22 at ¶ 11].  The defendant Directors all serve on the board of directors of CFS [*Id*. at ¶¶ 12-17].  First Merchants is also a publicly traded financial holding company incorporated in Indiana and headquartered in Muncie, Indiana [*Id*. at ¶ 18].

CFS, through its financial advisor, River Branch, contacted 12 Midwestern financial institutions to gauge interest in a merger with CFS, and conducted preliminary negotiations and due diligence with five of those institutions, including First Merchants [DE 37-1, the proxy statement[1] at 41]. These discussions eventually culminated in the submission of a non-binding letter of intent ("LOI") from three institutions, with First Merchants' bid being the highest. *Id*. at 42.  Even after receiving revised LOI's from First Merchants and another institution, First Merchants' bid remained the highest. *Id*. at 43.  On April 17, 2013, the Directors held a meeting with CFS' attorneys and River Branch to discuss the bids, ultimately and unanimously determining that it was in the best interests of CFS' shareholders, depositors and employees to negotiate a definitive merger agreement with First Merchants. *Id*.

By May 10, 2013,  the parties had agreed to a merger with an exchange ratio of 0.65 shares of First Merchants common stock for each share of CFS common stock, resulting in an implied share price of $10.56 and representing a significant premium (68%) over CFS' then-current 90-day share price and an approximate 13% premium over CFS' then closing price

---

[1] On July 3, 2013, First Merchants filed the Form S-4 Registration Statement, which also served as CFS' preliminary Proxy Statement.  This proxy statement was subsequently amended on September 20 and 27, although there were no substantive changes which have any effect on the plaintiff's allegations in the lawsuit [DE 28 at 5, n. 3; DE 36 at 5, n. 2].  References to the proxy statement herein are to the September 27, 2013 joint proxy statement [DE 37-1]).

of common stock on May 9, 2013 [DE 37-1 at 43-45, 59].  On May 13, 2013, CFS and First

Merchants' Agreement of Reorganization and Merger was executed, a press release issued, and

CFS and First Merchants each filed a Form 8-K publicly announcing the execution of the merger

agreement.  The law firm of Levi & Korsinsky, LLP, currently representing plaintiff, announced

in a press release the following day that it was investigating the merger and whether CFS' board

of directors breached their fiduciary duties.  On July 3, 2013, First Merchants filed the Form S-4

Registration Statement, which also served as CFS' preliminary Proxy Statement, indicating that

the shareholder vote for the approval of the merger was scheduled to take place on October 29,

2013 [DE 22 at ¶ 4].  Plaintiff then filed the complaint on July 30 (which was subsequently

amended), indicating the merger was expected to close in the fourth quarter of 2013 [DE 1].

Defendants admit that the merger agreement and Indiana law require that the proposed

transaction be approved by CFS shareholders [DE 47 at 4].  And, in order to approve the merger,

a majority of all outstanding shares (as opposed to simply a majority of the shares represented at

the meeting) must vote in favor of the merger. *Id*.  The date of the special meeting during which

CFS shareholders will vote upon the proposal to adopt the Merger Agreement has been set for

October 29, 2013.

The plaintiff seeks to enjoin the merger vote and alleges in order to cast an informed vote

on the merger the defendants should have provided more information regarding (1) CFS'

long-term prospects, (2) the financial analyses supporting the merger consideration performed by

River Branch, (3) conflicts of interest potentially affecting both the board of directors and River

Branch, and (4) information concerning the process leading up to the announcement of the

proposed merger [DE 22 at 8].  And specifically, the amended complaint identifies a laundry list

of undisclosed information, as summarized below:

1)      projected financial information for CFS or First Merchants, including projected EBITDA,

        revenues, profits, expenses, etc., and projected synergies;

2)      underlying methodologies, key inputs, and multiplers relied upon and observed by River

        Branch which were not included in River Branch's Summary of Proposal, Public Trading

        Analysis, CFS Precedent Transaction Analysis, Discounted Cash Flow Analysis,

        Contribution Analysis, and the Pro Forma Financial Impact Analysis;

3)      the process by which CFS' management or board of directors decided to pursue a

        strategic transaction, such as their individual involvement, the criteria used for selecting

        the 12 Midwestern-based financial institutions to contact in the fall of 2012, the basis for

        contacting First Merchants in February of 2013; the value of the indications of interest (in

        terms of exchange ratio and implied per share value) received throughout the process;

        and the various ancillary agreements that were discussed by the directors in May of 2013;

4)      any "potential" conflicts of interest affecting River Branch, whether any other financial

        advisors were considered, and compensation received or expected to be received by

        River Branch; and

5)      any "potential" conflicts of interest affecting CFS' members of management and board of

        directors including details relating to their post-merger opportunities with First

        Merchants.

[DE 22 at 8-15; DE 36 at 6-8].  Ultimately, plaintiff contends that in failing to provide this

critical information, the defendants have "made untrue statements of fact and omitted to state

material facts necessary to make the statements made not misleading." [DE 22 at 16].

## II.   DISCUSSION

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (internal citations omitted). "In assessing whether a preliminary injunction is warranted, [the court] must consider whether the party seeking the injunction has demonstrated that '1) it has a reasonable likelihood of success on the merits; 2) no adequate remedy at law exists; 3) it will suffer irreparable harm if it is denied; 4) the irreparable harm the party will suffer without injunctive relief is greater than the harm the opposing party will suffer if the preliminary injunction is granted; and 5) the preliminary injunction will not harm the public interest.'" *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Linnemeir v. Bd. of Trs. of Purdue Univ.*, 260 F.3d 757, 761 (7th Cir. 2001)). The district court must exercise its discretion to arrive at a decision "based on a subjective evaluation of the import of the various factors and a personal, intuitive sense about the nature of the case." *Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1436 (7th Cir. 1986).

The decision-making process also involves a "sliding scale" analysis, at least to the extent that "the more likely it is the plaintiff will succeed on the merits, the less the balance of irreparable harms need weigh toward its side; the less likely it is the plaintiff will succeed, the more the balance need weigh towards its side." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992). The sliding scale approach is not mathematical in nature; rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895–96 (7th Cir. 2001) (quoting *Abbott Labs.*, 971 F.2d at 12).  But there is still a threshold

to be met. A total failure to meet any one of the test's requirements cannot be compensated by a strong showing with respect to another. *See, e.g.*, *East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 703 (7th Cir. 2005) (holding that if a moving party cannot show that there is no adequate remedy at law, "a court's inquiry is over and the injunction must be denied"); *Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012) ("Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal.").

**A)      Likelihood of Success on the Merits**

At this stage, the court need not be certain about the outcome of the case. *See S.E.C. v. Lauer*, 52 F.3d 667, 671 (7th Cir. 1995) ("The case is before us on an appeal from the grant of a preliminary injunction, and as is too familiar to require citation such a grant is proper even if the district judge is uncertain about the defendant's liability."); *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 16 (1st Cir. 1996) (trial court "need not predict the eventual outcome on the merits with absolute assurance" at preliminary injunction stage). The plaintiff need only show a "reasonable likelihood" of success. *See St. John's*, 502 F.3d at 625. To assess the likelihood of success, the court looks to "standards provided by the substantive law." *Janvey v. Alguire*, 647 F.3d 585, 596 (5th Cir. 2011) (quoting *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 2011)).  A plaintiff must present a prima facie case according to those substantive standards. *See* Wright & Miller, Federal Practice and Procedure § 2948.3 (collecting authorities). Additionally, while the degree of likelihood of success a plaintiff needs to show may vary from case to case depending on the balance of harms, *see Abbott Labs.*, 971 F.2d at 12, a plaintiff must in all cases show *some* reasonable chance of success on the merits as a threshold matter, or his

claim fails, *Jolivette*, 694 F.3d at 765.

Here, plaintiff asserts a claim under section 14(a) of the Securities Exchange Act of 1934 and under the SEC's Rule 14a-9.  Section 14(a) declares it 'unlawful' to solicit proxies in contravention of Commission rules, *see* 15 U.S.C. § 78n(a), and SEC Rule 14a-9 prohibits solicitations containing any statement which is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading. 17 C.F.R. § 240.14a-9.  The purpose of § 14(a) is the protection of the right of shareholder to a full and fair disclosure of all material facts which affect corporate elections by proxy.

To state a claim under §14(a), a plaintiff must allege that: (1) the proxy statement contained a material misstatement or omission; which (2) caused plaintiff's injury; and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction. *City of St. Clair Shores Gen. Employees Ret. Sys. v. Inland W. Retail Real Estate Trust, Inc*., 635 F.Supp.2d 783, 790 (N.D. Ill. 2009) (citing *Mills v. Elec. Auto–Lite Co.*, 396 U.S. 375, 384-85 (1970)).  A fact is material within the meaning of the materiality requirement for liability under § 14(a) "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 1090-91 (1991) (citing *TSC Indus., Inc. v. Northway, Inc*., 426 U.S. 438, 449 (1976)).  In other words, a fact is material if, "under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder."  *TSC Indus., Inc.*, 426 U.S. at 449.

Assuming for the moment that the Indiana Dissenter's Rights Statute does not bar

plaintiff's requested relief (an issue which the parties contest),[2] the Court considers whether

plaintiff's claim under §14(a) establishes a likelihood of success.  Here, plaintiff focuses on the

materiality element of §14(a) [DE 36 at 14-21], rather than adequately specifying each statement

in the proxy statement alleged to have been misleading, and the reason or reasons why the

statement is misleading.  The statute insists that securities fraud complaints which allege that the

defendant "made an untrue statement of material fact" or "omitted to state a material fact

necessary in order to make the statements made . . . not misleading," must  "specify" each

misleading statement and "the reason or reasons why the statement is misleading." 15 U.S.C. §§

78u–4(b)(1), (2). *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 344-46 (2005); *see also Resnik*

*v. Swartz*, 303 F.3d 147, 151 (2d Cir. 2002) ("omission of information from a proxy statement

will violate [§ 14(a) and Rule 14a–9] if either the SEC regulations specifically require disclosure

of the omitted information in a proxy statement, or the omission makes other statements in the

proxy statement materially false or misleading").

　　　Yet, plaintiff does not allege that any particular SEC regulation has been violated because

specific information was not disclosed, nor does he cite to a single passage in the proxy

statement that is alleged to be false or misleading.  Even assuming the information alleged to

have been omitted was indeed material and excluded from the proxy statement, no where does

plaintiff specify which statements in the proxy statement are made misleading as a result of the

---

[2]The Indiana Dissenter's Rights Statute prohibits dissenting shareholders, objecting to the terms of a merger, from challenging or enjoining the proposed merger itself.  Ind. Code § 23-1-44-8(a).  Specifically, the relevant portion of the statute states as follows:

　　　A shareholder: (1) who is entitled to dissent and obtain payment for the shareholder's
　　　shares . . . may not challenge the corporate action creating . . . the shareholder's
　　　entitlement.

Ind. Code § 23-1-44-8(d) (internal citations omitted).

missing information.[3]   Rather, the plaintiff relies on various *truthful* statements made in the

proxy statement and argues that defendants must tell him more about the subject of those

statements.  However, as a district judge in Minnesota recently advised plaintiff's firm in a case

alleging similar deficiencies in the proxy statement, the element of false or misleading statement

is distinct from the element of materiality. *Gottlieb v. Willis*, No. 12-CV-2637 (PJS/JSM), 2012

WL 5439274 (D. Minn. Nov. 7, 2012).

Ultimately, plaintiff contends that in failing to provide this critical information, the

defendants have "made untrue statements of fact and omitted to state material facts necessary to

make the statements made not misleading." [DE 22 at 16].  Yet again, plaintiff makes this

blanket assertion without ever identifying a single untrue statement of material fact or

identifying any statements made to be misleading as a result of material omissions, as is required

for this type of lawsuit. 15 U.S.C. § 78u-4(b)(1); *see, e.g., Beck v. Dobrowski,* 559 F.3d 680, 685

(7th Cir. 2009) ("The plaintiff contends that the shareholders might have liked to have more

backup information, and perhaps some of them would have.  But there is nothing in the

complaint to suggest that any shareholder was misled or was likely to be misled by the dearth of

backup information—that is, that the shareholder drew a wrong inference from that dearth.").

These shortcomings are consistent with other federal lawsuits filed by plaintiff's counsel

using complaints nearly identical to the instant complaint in an attempt to bar corporate mergers

by claiming the proxy statements omitted material information without more.  *See Kugelman v.*

---

[3]The plaintiff's failure to identify the misrepresentations found in the proxy statement would make it difficult (if not impossible) to determine if under all the circumstances, the alleged omitted information would have assumed actual significance in the deliberations of a reasonable shareholder.

*PVF Capital Corp., et al.*, No. 1:13-cv-01606-PAG, 2013 WL 4804301 (N.D. Ohio Sept. 9, 2013) (dismissing the case on account of plaintiff's failure to point to any SEC rule requiring disclosure of the alleged omissions, and failure to identify with particularity any statements which were misleading); *Gottlieb v. Willis*, No. 12-CV-2637 (PJS/JSM), 2012 WL 5439274 (D. Minn. Nov. 7, 2012) (denying injunctive relief sought to enjoin a proposed merger until defendants disclosed additional information to shareholders).  Here too, plaintiff's amended complaint does not allege that any information omitted from the proxy statement was required to be disclosed by a particular SEC regulation, nor has plaintiff identified any specific statements in the proxy rendered misleading by said omissions. *See* 15 U.S.C. § 78u-4(b)(1).   The absence of this information greatly diminishes the likelihood of success.  Given the present record, the Court finds that the probability of success on the merits is slight.

**B)      Adequacy of Remedies at Law**

"Like other equitable remedies, injunctions were designed to offer relief when legal remedies were unavailable or inadequate to protect the parties' rights." *Roland Machinery Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 397 (7th Cir. 1984) (Swygert, J., dissenting).  Here, plaintiff does not assert that monetary damages are not available, but rather contends that monetary damages are not a sufficient substitute for an informed shareholder vote [DE 36 at 21-22; DE 48 at 8-9].  The Court disagrees. While in some instances it may be preferable to resolve issues prior to the shareholder vote so as to prevent an "unscrambling" of the eggs, *see, e.g., Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 386 (1970), often the circumstances present in those instances revealed a substantial likelihood of success on the merits, *see, e.g., Laidlaw Acquisition Corp. v. Mayflower Group, Inc.,* 636 F.Supp. 1513, 1517-18 (S.D. Ind. 1986), or made clear that

the proxy statement contained material omissions which were adequately identified. *See, e.g., Chambers v. Briggs & Stratton Corp.*, 863 F.Supp. 900, 903-05 (E.D.Wis. 1994).  Again, plaintiff has failed to demonstrate here that absent injunctive relief the shareholder vote will proceed on the basis of any identified misleading information.  And so, because the court could later undo the damage caused by any alleged (but not adequately specified) illegal proxy statement by providing monetary damages—which typically constitutes an adequate remedy at law—an adequate alternative exists.  In addition, plaintiff is not prevented from voting against the merger, encouraging others to do the same, or selling his stock. *See, e.g., In re Guidant Corp. Shareholders Derivative Litigation,* No. 1:03 CV 955 SEB WTL, 2006 WL 290524, *15 (S.D. Ind. 2006); *Shepard v. Meridian Ins. Group, Inc*., 137 F.Supp.2d 1096, 1113-14 (S.D. Ind. 2001) (determining that the Supreme Court of Indiana is likely to craft a remedy with a direct action against the responsible directors and officers, limited to monetary relief, *after* consummation of the merger, and injunctive relief certainly is not available).  While plaintiff may believe that monetary damages are less preferable, he has not established that there is an inadequate remedy at law sufficient to compensate any harm done, and therefore this factor weighs against granting the requested injunctive relief.

**C)**      **Irreparable Harm**

To demonstrate irreparable harm, the plaintiff "must show that [it] will suffer harm that cannot be prevented or fully rectified by the final judgment after trial." *Anderson v. U.S.F. Logistics (IMC), Inc.*, 274 F.3d 470, 478 (7th Cir. 2001).  Similar to plaintiff's failure to establish that no adequate legal remedy exists, plaintiff has not sufficiently shown that absent entry of a preliminary injunction he would suffer injury that could not be rectified upon entry of

final judgment, should he ultimately prevail in this matter.  The potential loss by shareholders should not be difficult to quantify as a basis for legal relief, and can be remedied after the merger. In other words, plaintiff is not left without protection.  Moreover, the record shows that First Merchants' bid remained the highest bid, and the merger agreement resulted in a significant premium of 68% over CFS' then-current 90-day share price and an approximate 13% premium over CFS' then closing price of common stock on May 9, 2013.  Having failed to establish irreparable harm, this factor does not support a preliminary injunction.

**D)      Balance of Harms and Public Interest**

"The balance between the harm to the plaintiff if injunctive relief is denied and the harm to the defendant if it is granted is a critical consideration in deciding whether to grant a preliminary injunction." *Ayres v. City of Chicago*, 125 F.3d 1010, 1012 (7th Cir. 1997). "In balancing the harms, the court must weigh the error of denying a preliminary injunction to the party who would win the case on the merits against the error of granting an injunction to the party who would lose." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 305 (7th Cir. 2003).  In addition, the Court simultaneously considers the final factor, which is whether the preliminary injunction will harm the public interest. *See St. John's*, 502 F.3d at 625.  Specifically with regard to corporate merger cases, the court is to consider the threatened harm to the public interest and the shareholders who are intended to be protected by § 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n(a). *See Chambers*, 863 F.Supp. at 906 (citation omitted).

Plaintiff argues that being deprived of his right to cast an informed vote will cause him and the public irreparable harm because stock transactions and mergers are difficult to unscramble and because the public has an interest in knowing the truth relative to the securities

industry [DE 36 at 22-25; DE 48 at 11-13].  As a general matter, the Court agrees that, in cases

of this type, the shareholder faces some risk of harm.  At the same time, however, that risk is not

irreparable and must be balanced against the risk that the Court might inflict even more harm,

likely irreparable, by enjoining the merger. Although plaintiff downplays the harm of an

injunction by suggesting defendants "will incur no hardship as a result of the requested

injunction," the Court agrees with defendants that enjoining a complex and time sensitive

transaction such as this will at a minimum create uncertainty and delay. Such a delay could

jeopardize the transaction itself, at the risk of an agreement expected to garner shareholders a

premium over CFS' current stock price.  Under these circumstances, the balance of the harms

and public interest dictate that plaintiff's motion be denied.

The Court's conclusion is bolstered by the fact that, of CFS' approximately 11 million

outstanding shares, plaintiff has not alleged how many he owns, nor (as explained above) has he

adequately explained how the sought-after information is necessary to correct any misleading

statements in the proxy in order to cast an informed vote.  Thus, the Court is essentially being

asked to enjoin a $115.5 million transaction by a person who may own no more than a single

share of CTS stock (worth less than $20).  While even shareholders who own only a few shares

have the right to cast an informed vote and the public has the right to proper disclosure—there is

no evidence regarding what, if any, financial harm plaintiff would suffer.  And even though

plaintiff seeks relief on behalf of a class, it is too early at this stage to determine whether a class

should be certified.  More importantly, plaintiff has not sought class certification nor is there any

indication whether other shareholders share plaintiff's desire to enjoin the merger.  *See e.g,*

*Gottlieb v. Willis*, No. 12-CV-2637 (PJS/JSM), 2012 WL 5439274 (D. Minn. Nov. 7, 2012)

(employing similar reasoning).

A court order granting a preliminary injunction would prevent the shareholder vote from being taken based on nothing more than unspecified misrepresentations or omissions causing unspecified misrepresentations.  The Court cannot conclude that the alleged harm has the type of significant propensity to affect the voting process as found in the express terms of Rule 14a-9, which is meant to ensure that a cause of action cannot be established where it does not further the interests protected by § 14(a). *See, e.g., Mills*, 396 U.S. at 384.  And even if plaintiff could establish a greater likelihood of success on the merits, he has failed to satisfy any of the remaining elements necessary to warrant a preliminary injunction.  As a result, the Court will not enjoin the merger vote at this time.

Finally, the Court has determined that no hearing on the preliminary injunction need be held.  Counsel acknowledged during an informal consultation with Court staff that the briefs themselves adequately narrowed the relevant issues such that a formal status conference would likely not prove beneficial. And with respect to an evidentiary hearing on the preliminary injunction, while one was previously requested by plaintiff, he has not explained why a hearing would be productive nor demonstrated any intent to introduce evidence that if believed would so weaken the non-moving party's case so as to affect the decision on whether to issue the injunction. *AlliedSignal, Inc. v. B.F. Goodrich Co.,* 183 F.3d 568, 577 (7th Cir. 1999) (citing *Ty, Inc. v. GMA Accessories, Inc*., 132 F.3d 1167, 1171 (7th Cir.1997)).

## III.  CONCLUSION

For the aforementioned reasons, Plaintiff's motion for preliminary injunction [DE 35] is DENIED.

SO ORDERED.

ENTERED:   October 28, 2013

                                          /s/ JON E. DEGUILIO

                                          Judge
                                          United States District Court